

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

~~XXXXXXXXXXXXX~~

ATTORNEY GENERAL

Mr. O. P. Lockhart
Chairman
Board of Insurance Commissioners
Austin, Texas

Opinion No. O-5526
Re: Authority of a Lloyds
Company to write proposed
bond submitted.

Dear Sir:

     In your letter of August 9th, 1943, you submitted a copy of the Articles of Agreement of the South Texas Lloyds of Austin, Texas, together with what is designated a "Guaranty Payment Bond," which that company proposes to sell, and asked our opinion whether under Chapter 19, Title 78 of the Revised Civil Statutes of Texas, the company is authorized to write such insurance. Under date of August 23rd, you submitted a new form of Articles of Agreement which the underwriters at the subject Lloyds intend to execute and file with your department. We shall, therefore, confine our opinion to the legality of the bond under the proposed amended articles.

     Under the terms of the "Guaranty Payment Bond," the Lloyds Company undertakes to (1) guarantee payment of a described promisory note secured by chattel mortgage upon default by the maker of the note; (2) pay any direct loss occasioned by the forgery of the maker's signature; and (3) pay any direct loss due to the maker having defective title.

     Article 5013, Vernon's Annotated Civil Statutes, reads:

     "Individuals, partnerships, or associations of individuals, hereby designated 'underwriters,' are authorized to make any insurance, except life insurance, on the Lloyd's Plan by executing articles of agreement expressing their purpose so to do and complying with the requirements set forth in this chapter."

     Article 5015, Vernon's Annotated Civil Statutes, specifies the kinds of insurance attorneys at Lloyds may effect as:

     "***

     "1. Fire insurance, which term shall be construed to include tornado, hail, crop and floater insurance.

     "2. Automobile insurance, which term shall be construed to include fire, theft, transportation, property damage, collision liability and tornado insurance.

"3.   Liability insurance.

"4.   Marine insurance.

"5.   Accident and health insurance.

"6.   Burglary and plate glass insurance.

"7.   Fidelity and surety bonds insurance.

"8.   Any other kinds of insurance not above specified, the making of which is not otherwise unlawful in this State, except life insurance. ***"

The underwriters in question under the amended Articles of Agreement propose to write:  (1) automobile insurance, which term shall be construed to include fire, theft, transportation, property, damage, collision, liability and tornado insurance; (2) fidelity and surety bonds insurance, and (3) accident and health insurance.

While it is thus plain that under the Lloyd's Plan any lawful insurance, other than life insurance, may be written, it is important to classify each kind written under the appropriate designation given in Article 5015 for the reason that Article 5017 requires additional net assets of $10,000-above the initial $60,000 required-for each additional kind of insurance specified in Article 5015.

It is also clear that the proposed "Guaranty Payment Bond" is not "automobile insurance" nor is it "accident and health insurance." The third kind of insurance proposed to be written is "fidelity and surety bond insurance."

The term "fidelity and surety bond insurance" is used both in Article 5015 and in the amended Articles of Agreement. Our problem is to determine whether that term comprehends the kind of contract represented by the "Guaranty Payment Bond."

We are inclined to the view that in using the term "fidelity and surety bond insurance" the Legislature had in mind the same kinds of contract fidelity, guaranty and surety companies are authorized to write under Chapter 16 of Title 78 of the Revised Civil Statutes.  Article 4969 of that Chapter authorizes such companies to act as follows:

"*** to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals or private corporations and the State and municipal corporations or counties or between corporations and individuals;*** (Emphasis supplied)

The language of this statute is found in describing the kinds of contracts these companies are authorized to write. They may "guarantee any contract or undertaking." This, in our opinion, would fully empower fidelity, guaranty and surety companies to write the "Guaranty Payment Bond" submitted. The Legislature, in our opinion, had the same class of business in mind in authorizing Lloyds companies to write fidelity and surety bond insurance.

We therefore advise you that the "Guaranty Payment Bond" submitted with your request is "fidelity and surety bond insurance" within the meaning of Article 5015, Vernon's Annotated Civil Statutes, and the underwriters at South Texas Lloyds may write such insurance under the amended Articles of Agreement.

We advert to the second question contained in your letter of August 9th, wherein you ask:

"If your answer to the preceding inquiry is in the affirmative, will you please advise me whether the Lloyds' obligation under the policy is such as to require it to treat the unpaid balances of such notes as liabilities and to maintain assets equivalent to such liabilities."

As we have previously pointed out, Article 5017 requires that each Lloyds have net assets, the guaranty fund included, of at least $60,000, with an additional $10,000 in net assets for each additional kind of insurance to be written; that is, if two kinds of insurance are to be effected there must be net assets of at least $70,000. Article 5017b, Vernon's Annotated Civil Statutes, states that:

"*** Underwriters at a Lloyd's shall be deemed solvent when the net assets on hand shall meet the requirements of this Chapter after deducting from its gross assets all outstanding liabilities, including reserve liabilities, and when the contributed guaranty fund at least to the minimum required herein shall be unimpaired. ***"

In our opinion, the answer to your question is covered in Article 5017c. Under that article underwriters are required to compute reserve liabilities for all outstanding business upon the same basis required for stock insurance companies doing the same classes and character of business in Texas. We have previously determined that Chapter 16 of Title 78, Revised Civil Statutes, is the applicable chapter for stock insurance companies doing the same character of business and Article 4971 of that Chapter requires stock companies to set up as liabilities a premium reserve at the rate of 50% of the current annual premiums. This statute also requires the amount of liabilities for the

unearned portion of such undertakings to be estimated at the rate of 50% of the current annual premiums.

This policy of the Legislature translated to apply to a Lloyds writing the kind of guaranty payment bond previously described would require the attorney to set up as liabilities one-half of the premium on each undertaking, which portion must remain in the premium reserve as a liability until the obligation has become void.  The only requirement as to the maintenance of assets, however, is that contained in Article 5017 and Article 5017b; the former requiring $60,000 in net assets for the first kind of insurance written and an additional $10,000 in net assets for each additional kind written.  The Lloyds in question writing three kinds of insurance will be required to maintain net assets of at least $80,000.

With the explanation given, we answer your second question in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Jas. D. Smullen
Jas. D. Smullen, Assistant

APPROVED SEP 14, 1943
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:        BWB, CHAIRMAN

JDS:EP:wb